UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
BRADLEY GOLDOWSKY, on behalf of himself                     :
and all others similarly situated,                          :
                                                            :
                Plaintiffs,                                 :
                                                            :
        -against-                                           :     1:15-cv-00632
                                                            :
EXETER FINANCE CORP.,                                       :
                                                            :
                Defendant.                                  :
                                                            :
                                                            :
------------------------------------------------------------x


---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

---

Melissa J. Osipoff
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1745 Broadway, Floor 22
New York, NY  10019
(212) 492-2500
*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT .................................................................... 1

II.  STATEMENT OF RELEVANT FACTS ................................................... 2

    A.  Goldowsky Entered Into A Binding Arbitration Agreement with
        Exeter, Which Covers All Of Goldowsky's Claims In This Case ............. 2

    B.  The Twenty (20) Arbitration Opt-In Plaintiffs Entered Into A Binding
        Arbitration Agreement with Exeter, Which Covers All Of Their
        Claims In This Case ................................................................................... 5

III.  ARGUMENT ........................................................................................... 6

    A.  The FAA And Supreme Court Authority Mandate Enforcement Of The
        Mutual Arbitration Agreement ................................................................. 6

    B.  The Court Should Compel Goldowsky to Arbitrate His Claims...................... 8

        *1.  Goldowsky and Exeter Agreed to Arbitration* ....................................... 8

        *2.  Goldowsky's Claims Are Covered By The Mutual Arbitration
           Agreement* ....................................................................................... 9

        *3.  Congress Did Not Intend For Wage And Hour Claims To Be
           Nonarbitrable* ................................................................................. 9

    C.  The Court Must Stay The Case In Its Entirety ............................................. 10

    D.  Alternatively, Should The Court Not Stay The Case In Its Entirety,
        The Court Should Compel Arbitration Of The Claims Of The
        Twenty (20) Arbitration Opt-In Plaintiffs................................................. 13

IV.  CONCLUSION...................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ..............................................................................................7

*Austin Air Systems, Ltd. v. Bank of America Corp.*,
  2012 WL 4509874 (W.D.N.Y. Sept. 28, 2012) .........................................................8

*Beery v. Quest Diagnostics, Inc.*,
  2013 WL 3441792 (D.N.J. July 8, 2013) ................................................................11, 12, 13

*Brown v. St. Paul Travelers Companies*,
  559 F. Supp. 2d 288 (W.D.N.Y. 2008),
  *aff'd* 331 Fed. Appx. 68 (2d Cir. 2009) ....................................................................8

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012) ................................................................................................7

*Dean Witter Reynolds v. Byrd*,
  470 U.S. 213 (1985) ...............................................................................................7, 14

*Genesis Healthcare Corp. v. Symczyk*,
  133 S. Ct. 1523 (2013) ...........................................................................................11, 12, 13

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20, 25 (1991) ..............................................................................................7

*Katz v. Cellco Partnership*,
  2015 WL 4528658 (2d Cir. July 28, 2015) ............................................................10, 12, 13

*LaVoice v. UB Financial Services, Inc.*,
  2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) .............................................................10

*Manigault v. Macy's East, LLC*,
  318 Fed. Appx. 6 (2d Cir. 2009) ...............................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  Inc, 473 U.S. 614 (1985) ...........................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................................8

*Ryan v. JP Morgan Chase & Co.*,
  924 F. Supp. 2d 559 (2013) .......................................................................................10

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)............................................................................................7

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984)..............................................................................................7

*Starke v. Gilt Groupe, Inc.*,
   2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)..........................................9

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013)........................................................................10

**Statutes**

9 U.S.C. § 4............................................................................................................7

29 U.S.C. § 216(b)..............................................................................................11

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ..................................... *passim*

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .............................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................1

Federal Rule of Civil Procedure 23 ..............................................................2, 5

Defendant Exeter Finance Corp. ("Exeter" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). As explained below, the Court should compel the Plaintiff, Bradley Goldowsky ("Goldowsky" or "Plaintiff"), to participate in arbitration with Exeter, and stay the case in its entirety.  Alternatively, should the Court not stay the case in its entirety, the Court should compel twenty (20) individuals who have filed Consent to Become a Party Plaintiff forms to participate in arbitration with Exeter and stay the case relative to their claims as well.[1]

I.      **PRELIMINARY STATEMENT**

Goldowsky was employed with Exeter from October 29, 2013 until December 2, 2014, serving as the Assistant Area General Manager in Exeter's Buffalo, New York branch and remotely as a Senior Credit Manager out of Exeter's Albany, New York branch.  In the spring of 2014, Exeter instituted a program in which it agreed to arbitrate all legal disputes with its employees, and to pay expenses unique to arbitration, in return for its employees' agreement to do the same.  Goldowsky accepted the terms of the Mutual Arbitration Agreement, and, by doing so agreed to arbitrate any claims relating to his employment with Exeter on an individual basis, including any claims for wages, overtime, or other compensation.

On July 15, 2015, Goldowsky filed his Complaint with this Court, alleging that Defendant violated the Fair Labor Standards Act (the "FLSA") and New York Labor Law ("NYLL") by failing to pay Goldowsky overtime for hours worked over forty (40) in a week.

---

[1] Exeter files its Motion to Compel Arbitration in lieu of answering or moving to dismiss the Complaint.  Exeter respectfully reserves its rights to file a subsequent Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) motion to dismiss Goldowsky's Complaint, in whole or in part, if its Motion to Compel Arbitration is denied.

Goldowsky brought his FLSA claims as a putative collective action and his NYLL claims as a putative class action under Federal Rule of Civil Procedure 23.  Also on July 15, 2015, thirty six (36) individuals filed Consent to Become a Party Plaintiff forms (the "Opt-In Plaintiffs"), seeking to join the putative FLSA collective action should a class be certified.  Twenty (20) of the thirty six (36) Opt-In Plaintiffs accepted the terms of the Mutual Arbitration Agreement, and, by doing so agreed to arbitrate any of their claims relating to their employment with Exeter, including any claims for wages, overtime, or other compensation, on an individual basis (these twenty (20) individuals are hereinafter referred to as the "Arbitration Opt-In Plaintiffs").

Goldowsky's claims, and the claims of the Arbitration Opt-In Plaintiffs, directly relate to their employment with Exeter.  As a result, and as demonstrated in greater detail below, Goldowsky, and the Arbitration Opt-In Plaintiffs, are precluded from instituting a civil court action for alleged unpaid overtime.  The United States Supreme Court has uniformly held that agreements to arbitrate are enforceable under the FAA, and courts have routinely compelled the arbitration of wage and hour claims, such as those brought forth by Goldowsky here.  Furthermore, because all of the claims in Goldowsky's Complaint are covered by the Mutual Arbitration Agreement, the Court must stay the case in its entirety.  Alternatively, should the Court not stay the case in its entirety, and proceed with the case in any way, the Court should compel the Arbitration Opt-In Plaintiffs to participate in arbitration with Exeter and stay the case relative to their claims as well.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Goldowsky Entered Into A Binding Arbitration Agreement with Exeter, Which Covers All Of Goldowsky's Claims In This Case

Exeter acquires retail installment sales contracts from dealers that provide automobile financing to customers located across the country in a variety of different states.  *See* Declaration

of Nova Albers, attached hereto as Attachment 1 ("Albers Decl."), ¶ 3.  Exeter is headquartered

in Irving, Texas but has employees located in several different states across the country and

maintains business relationships with automobile dealers in multiple states.  *Id.*  In the spring of

2014, Exeter instituted a program in which it agreed to arbitrate all legal disputes with its

employees (and pay the costs unique to arbitration) in return for its employees' agreement to do

the same.  *Id.* ¶ 6.  The Mutual Arbitration Agreement stated, in relevant part, that:

> Employee and the Company[2] both agree all legal disputes and claims between them,
> including without limitation those relating to Employee's employment with the
> Company…shall be determined exclusively by final and binding arbitration before a
> single, neutral arbitrator as described herein.  Except as provided in paragraph 2 below,
> **claims subject to arbitration under this Agreement include those for…wages,**
> **overtime, benefits, or other compensation**….  *Id.*, Exhibit A ¶ 1 (emphasis added).

Additionally, among other things, the Mutual Arbitration Agreement (1) sets forth the process by

which a party must undertake to initiate a dispute or claim (*Id.*, Exhibit A ¶ 4); (2) sets forth the

rules by which the arbitration will be governed (*Id.*, Exhibit A ¶ 5); (3) states that Exeter will pay

all costs unique to arbitration (*Id.*, Exhibit A ¶ 8); and (4) states that the Mutual Arbitration

Agreement remains in effect after the termination of an employee's employment with Exeter

(*Id.*, Exhibit A ¶ 9).

When Exeter instituted its arbitration program, Exeter contacted every employee at their

company-provided email address, which was issued to every employee at the commencement of

their employment, and provided them with a proposed Mutual Arbitration Agreement.  *Id.* ¶¶ 5,

6.  The email containing the Mutual Arbitration Agreement directed employees to read the

Mutual Arbitration Agreement, together with other Human Resource-related materials.  *Id.* ¶ 7.

Employees were then asked to signify that they understood the Mutual Arbitration Agreement

---

[2] Defined in the Arbitration Agreement as Exeter Finance Corp.  *See* Albers Decl., Exhibit A.

and agreed to its terms by checking an electronic box labelled "I agree." *Id.* ¶ 8, Exhibit A.

Employees were given the option of opting out of the Mutual Arbitration Agreement by

delivering, within 30 days of the date the Mutual Arbitration Agreement was presented to them,

a signed copy of an opt-out form to Exeter's senior Human Resources officer. *Id.* ¶ 9, Exhibit A

¶ 11.  The Mutual Arbitration Agreement provides that if an employee does not opt out of the

Mutual Arbitration Agreement, he or she shall be deemed to have accepted its terms. *Id.*[3]

Goldowsky acknowledged that he agreed to the terms of the Mutual Arbitration Agreement

provided to him on March 10, 2014, and did not submit an opt-out form. *Id.* ¶ 12.  Therefore,

Goldowsky is bound by the terms of the Mutual Arbitration Agreement. *Id.* ¶¶ 8, 9, 12, Exhibit

A, ¶ 1.

On July 15, 2015, Goldowsky filed his Complaint with this Court, alleging that

Defendant violated the FLSA and NYLL by failing to pay Goldowsky overtime for hours

worked over forty (40) in a week.  (Dkt. 1.)[4]  In filing the Complaint, Goldowsky implicitly asks

the Court to disregard the Mutual Arbitration Agreement, which requires him to arbitrate all

claims relating to his employment with Exeter, including those for wages, overtime, or other

compensation, on an individual basis.  All of Goldowsky's allegations under the FLSA and

NYLL directly relate to his employment with Exeter and seek alleged unpaid compensation in

the form of wages and overtime.  Consequently, as demonstrated below, Goldowsky must

arbitrate his claims as he expressly agreed to do in the Mutual Arbitration Agreement.

---

[3] In addition, since Exeter initiated its mutual arbitration program in the spring of 2014, all new employees, upon their hire, are presented with a copy of the Mutual Arbitration Agreement. Albers Decl. ¶ 10.  As with those employees who were employed in the spring of 2014, new employees are asked to acknowledge that they understand the Mutual Arbitration Agreement and agree to its terms, and are provided with 30 days in which to opt out.  *Id.*

[4] Exeter unequivocally denies Goldowsky's claims.

B.    The Twenty (20) Arbitration Opt-In Plaintiffs Entered Into A Binding Arbitration
       Agreement with Exeter, Which Covers All Of Their Claims In This Case

Goldowsky brought his FLSA claims as a putative collective action and his NYLL claims as a putative class action under Federal Rule of Civil Procedure 23.[5]  (Dkt. 1.)  On July 15, 2015, thirty six (36) Opt-In Plaintiffs filed Consent to Become a Party Plaintiff forms, seeking to join the putative FLSA collective action should an FLSA class be certified.  (Dkt. 2.)  Two days later, on July 17, 2015, Goldowsky filed a motion to conditionally certify the FLSA class and send notice of the lawsuit to putative class members.  (Dkt. 4.)

Twenty (20) of the Opt-In Plaintiffs – the Arbitration Opt-In Plaintiffs – also acknowledged that they agreed to the terms of the Mutual Arbitration Agreement and also did not submit opt-out forms, as described in Section I.A., *supra*.  The Arbitration Opt-In Plaintiffs, and the date on which each acknowledged receipt of the Mutual Arbitration Agreement, are as follows:

| Arbitration Opt-In Plaintiff | Date of Mutual Arbitration Agreement Acknowledgment |
| --- | --- |
| Christopher Armor | March 11, 2014 |
| Constance C. Clymer | March 10, 2014 |
| Latoya Lynn Coleman | March 18, 2014 |
| Mario Deantonellis | April 9, 2014 |
| Sarah deBerard | March 7, 2014 |
| Irma Declet | March 10, 2014 |
| Stuart DeGraff | March 12, 2014 |
| Larry Forney | April 7, 2014 |
| Ryan Grundy | April 29, 2014 |

---

[5] In addition, Goldowsky purports to plead a claim that Exeter violated (unnamed) "Other State Laws" in reference to (unnamed) putative class members.

| | |
|---|---|
| Cathy Jennier Hink | March 17, 2014 |
| Martin F. Knoesel | April 4, 2014 |
| Maranda Landers | March 12, 2014 |
| Craig McKinnis | March 10, 2014 |
| Cathleen Pliska | March 18, 2014 |
| Joseph Repasky | March 18, 2014 |
| Tiffney Rey | March 18, 2014 |
| Randy J. Stewart | March 10, 2014 |
| Shbrone Watson | March 29, 2014 |
| Sheila Whitfield | March 8, 2014 |
| Jonathan Whynock | March 10, 2014[6] |

Therefore, the twenty (20) Arbitration Opt-In Plaintiffs also are bound by the terms of the Mutual Arbitration Agreement.  *Id.* ¶¶ 8, 9, 13, Exhibit A ¶ 1.  They, too, implicitly ask the Court to ignore their arbitration agreement, which requires them to arbitrate all claims relating to their employment with Exeter, including those for wages, overtime, or other compensation, on an individual basis.  All of the Arbitration Opt-In Plaintiffs' allegations under the FLSA directly relate to their employment with Exeter and seek alleged unpaid compensation in the form of wages and overtime.  Consequently, as demonstrated below, the Arbitration Opt-In Plaintiffs must arbitrate their claims as they expressly agreed to do in the Mutual Arbitration Agreement.

## III.   ARGUMENT

A.   The FAA And Supreme Court Authority Mandate Enforcement Of The Mutual Arbitration Agreement

A motion to compel arbitration is governed by Section 4 of the FAA, 9 U.S.C. § 1 *et seq.*, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

---

[6] *Id. ¶* 13.

court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The United States Supreme Court has found that "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

The FAA has been consistently interpreted by the Supreme Court as establishing a "federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991).  "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).  Thus, Courts must "rigorously enforce agreements to arbitrate" as embodied in the FAA and the strong federal policy favoring arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, Inc, 473 U.S. 614, 626 (1985) (citation omitted); *see also Dean Witter Reynolds*, 470 U.S. 213 at 219 (holding that a Court must compel arbitration of otherwise arbitrable claims when a motion to compel arbitration is made); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) ("[Section] 4 of the Act directs a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate").

The United States Supreme Court has directed courts to construe arbitration clauses as broadly as possible, and the FAA establishes that as a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

      B.     <u>The Court Should Compel Goldowsky to Arbitrate His Claims</u>

To decide a motion to compel arbitration under the FAA, the Court must assess the following three factors: (i) whether the parties agreed to arbitrate; (ii) whether the parties' claims fall within the scope of the agreement; and (iii) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. *Brown v. St. Paul Travelers Companies*, 559 F. Supp. 2d 288, 290 (W.D.N.Y. 2008), *aff'd* 331 Fed. Appx. 68 (2d Cir. 2009) (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). Each of these inquiries inevitably leads to the conclusion that the Court should compel Goldowsky to arbitrate his claims.

      1.    *Goldowsky and Exeter Agreed to Arbitration*

There can be no dispute that Goldowsky and Exeter entered into a valid, binding arbitration agreement, whereby Exeter agreed to arbitrate all legal disputes with Goldowsky in return for Goldowsky's agreement to do the same. Albers Decl. ¶¶ 6, 12, Exhibit A. The Court should find that the parties agreed to arbitration where "a contractual basis exists for compelling arbitration…." *Austin Air Systems, Ltd. v. Bank of America Corp.*, 2012 WL 4509874, at *3 (W.D.N.Y. Sept. 28, 2012). Here, there is indisputably a contractual basis for compelling arbitration. Goldowsky received the Mutual Arbitration Agreement via email to his company-provided email address, and was directed to review the Mutual Arbitration Agreement. Albers Decl. ¶¶ 5-8. Goldowsky signified that he understood the Mutual Arbitration Agreement and agreed to its terms by checking an electronic box labelled "I agree." *Id.* ¶ 8, 12, Exhibit A; *see Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (arbitration agreement enforceable where individual clicked a button online and was informed that by

clicking the button he was bound by the terms of the arbitration agreement).

Moreover, Goldowsky did not opt out of the Mutual Arbitration Agreement within 30 days of receiving it, as was his option, and continued his employment with Exeter until December 2, 2014.  Albers Decl. ¶¶ 9, 14, Attachment A ¶ 11; *see Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 8 (2d Cir. 2009) (holding employee assented to arbitration agreement that was mailed to the employee, and the employee did not sign the agreement, but the employee did not opt out of the arbitration agreement, as was her option, and continued employment with the employer).  Thus, Goldowsky assented to and was bound by the Mutual Arbitration Agreement in which he explicitly agreed to arbitrate claims relating to his employment with Exeter.

2.   <em>Goldowsky's Claims Are Covered By The Mutual Arbitration Agreement</em>

Goldowsky's FLSA and NYLL claims asserted in his Complaint are expressly covered by the scope of the Mutual Arbitration Agreement.  The Mutual Arbitration Agreement states that:

> Employee and the Company both agree all legal disputes and claims between them, including without limitation those relating to Employee's employment with the Company…shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.  Except as provided in paragraph 2 below, **claims subject to arbitration under this Agreement include those for…wages, overtime, benefits, or other compensation**….  Albers Decl., Exhibit A ¶ 1 (emphasis added).

Goldowsky simply cannot advance a colorable argument that his FLSA and NYLL claims for alleged unpaid overtime are beyond the scope of the Mutual Arbitration Agreement.

3.   <em>Congress Did Not Intend For Wage And Hour Claims To Be Nonarbitrable</em>

It is well-settled in the Second Circuit that agreements to arbitrate FLSA and NYLL claims, such as those brought by Goldowsky here, are enforceable.  *See Sutherland v. Ernst &*

9

*Young LLP*, 726 F.3d 290 (2d Cir. 2013) (holding that employee's FLSA and NYLL claims must proceed individually in arbitration pursuant to the FAA).  In addition, district courts within the Second Circuit have routinely compelled the arbitration of FLSA and NYLL claims.  *See, e.g. Ryan v. JP Morgan Chase & Co.*, 924 F. Supp. 2d 559, 565-66 (2013) (granting employer's motion to compel arbitration of plaintiff's FLSA claims for alleged unpaid overtime); *LaVoice v. UB Financial Services, Inc.*, 2012 WL 124590 at *9 (S.D.N.Y. Jan. 13, 2012) (granting employer's motion to compel arbitration of plaintiff's FLSA and NYLL claims).  Nor is there a risk that Goldowsky's statutory right to pursue his alleged wage and hour claim against Exeter would be jeopardized by proceeding in arbitration.  *See Ryan,* 924 F. Supp. 2d at 565 (no risk that arbitration agreement prevented plaintiff from vindicating his statutory right to damages under the FLSA).  Goldowsky's FLSA and NYLL claims are arbitrable and the terms of the Mutual Arbitration Agreement must be enforced.

      C.     <u>The Court Must Stay The Case In Its Entirety</u>

      Within the Second Circuit, "a stay of proceedings [is] **necessary** after all claims have been referred to arbitration and a stay requested."  *Katz v. Cellco Partnership*, 2015 WL 4528658, at *3 (2d Cir. July 28, 2015) (emphasis added).  In its recent *Katz* decision, the Second Circuit made it abundantly clear that the plain language of the FAA "specifies that the court '**shall**' stay proceedings pending arbitration….Nowhere does the FAA abrogate this directive or render it discretionary."  *Id* (emphasis added) (citations omitted).  In the instant case, all of the claims in Goldowsky's Complaint must be referred to arbitration, and, thus, the Court, in accordance with the Second Circuit's directive in Katz, ***must*** stay the case in its entirety.

Goldowsky's claims are brought under the FLSA and NYLL for unpaid overtime,[7] and thus all of Goldowsky's claims are clearly covered by the Mutual Arbitration Agreement, which binds Goldowsky to arbitrate all claims relating to his employment with Exeter, including claims for wages, overtime, or other compensation.  Albers Decl., Exhibit A ¶ 1.

In addition, once Goldowsky's individual claims are compelled to arbitration, this court no longer has jurisdiction over the claims of the Opt-In Plaintiffs.  *See Beery v. Quest Diagnostics, Inc.*, 2013 WL 3441792, at *3 (D.N.J. July 8, 2013).  As the Supreme Court has held, "the mere presence of collective-action allegations in the complaint cannot save [a] suit from mootness once the individual claim" is no longer before the court.  *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013).  In *Beery*, the district court, relying on the Supreme Court's decision in *Genesis Healthcare*, compelled the named plaintiff to arbitrate and dismissed the complaint in its entirety where the named plaintiff brought a putative Equal Pay Act ("EPA") collective action,[8] other individuals filed consent-to-join forms, and the named plaintiff then moved for conditional certification.  *Beery*, 2013 WL 3441792, at *1-2.  The *Beery* court held that once the named plaintiff's claims were dismissed, "[r]etaining jurisdiction over the named Plaintiffs' now-defunct Equal Pay Act claim, swapping in as plaintiffs the four individuals who filed consent-to-join forms, would be inconsistent with the reasoning, if not the holding, of [*Genesis Healthcare*.]"  *Id.* at *3.  Simply put, "the mere filing of consent-to-join forms [did] not confer party-plaintiff status" to opt-ins in a putative collective action.  *Id.* at *1.

---

[7] Goldowsky also purports to plead a claim that Exeter violated (unnamed) "Other State Laws" in reference to (unnamed) putative class members, alleging unpaid overtime.  While this claim is not properly plead, it appears to be a purported invocation of other states' wage and hour laws, disputes under which are covered by the Mutual Arbitration Agreement.

[8] The EPA is part of the same statutory scheme as the FLSA, and EPA collective actions, as with FLSA collective actions, are brought pursuant to 29 U.S.C. § 216(b).

The *Beery* court reasoned that under *Genesis Healthcare **all three*** of the following conditions are required for opt-ins to become party plaintiffs in a putative collective action: (1) conditional certification is granted; (2) notice is sent to the putative collective action class; and (3) an opt-in files a consent-to-join form. *Id* at *3. Equally important, without a named plaintiff properly in the case, "it is impractical if not impossible to determine whether third parties are 'similarly situated' to them." *Id.* Because other individuals had filed consent-to-join forms but the court had not granted conditional certification at the time that it dismissed the named plaintiff's claims and compelled arbitration, the individuals who filed consent-to-join forms were not properly parties to the case, and the court dismissed the case in its entirety. *Id.*

Almost precisely the same factual scenario is present in the instant case. Although other individuals filed Consent to Become a Party Plaintiff forms on July 15, 2015, and Goldowsky moved for conditional certification on July 17, 2015, the Court has yet to grant conditional certification. As the court in *Beery* held, the Opt-In Plaintiffs are thus not proper party plaintiffs in the case before the Court. Therefore, once Goldowsky's claims are compelled to arbitration, all of the claims in the Complaint that are properly before the Court have been compelled to arbitration, and the Court ***must*** stay the case in its entirety.[9]

---

[9] The one variance between the instant case and *Beery* lies in the difference between the law regarding compelling arbitration in the Third Circuit versus the Second Circuit. While the *Beery* court exercised its discretion to dismiss the named plaintiff's claims after compelling arbitration, the Second Circuit's recent decision in *Katz* has made it clear that district courts in the Second Circuit no longer have that discretion, and must stay an action after compelling arbitration. *See Beery*, 2013 WL 3441792, at *1; *Katz*, 2015 WL 4528658, at *3. However, the fact that the Second Circuit has directed district courts to stay a case, as opposed to having the discretion to dismiss it, does not change the fact that the Opt-In Plaintiffs are not proper party plaintiffs in the case before the Court, and that all of the claims in the Complaint that are properly before the Court have been compelled to arbitration.

12

D.      Alternatively, Should The Court Not Stay The Case In Its Entirety, The Court
        Should Compel Arbitration Of The Claims Of The Twenty (20) Arbitration Opt-
        In Plaintiffs

The Second Circuit's decision in *Katz* requires the Court to stay this case in its entirety.

But, at an absolute minimum, if the Court allows this case to proceed in any way, the Court

should compel arbitration for the claims of the Twenty (20) Arbitration Opt-In Plaintiffs, and

stay the case relative to their claims, as well.[10]  The Arbitration Opt-In Plaintiffs agreed to

arbitrate claims relating to their employment with Exeter, including claims for wages, overtime,

and other compensation.  Albers Decl. ¶¶ 6-9, 13, Exhibit A ¶ 1.  The Arbitration Opt-In

Plaintiffs all acknowledged that they agreed to the terms of the Mutual Arbitration Agreement

and did not submit opt-out forms, in exactly the same manner as Goldowsky.  Therefore, for the

same reasons applicable to Goldowsky, as discussed in Section III.B, *supra*, the twenty (20)

Arbitration Opt-In Plaintiffs must be compelled to arbitrate their claims for which they have

consented to join in this case.  *See Dean Witter Reynolds*, 470 U.S. 213 at 218 ("By its terms, the

[FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that

district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

agreement has been signed.")

IV.    **CONCLUSION**

For the foregoing reasons, Exeter respectfully requests that this Court compel Goldowsky

to participate in arbitration with Exeter, and stay the case in its entirety.  Alternatively, should

---

[10] The Court could also stay Goldowsky's individual claims pending arbitration and dismiss
Goldowsky's collective action and class action claims.  As the court in *Beery* held, "[r]etaining
jurisdiction over the named Plaintiffs' now-defunct Equal Pay Act claim, swapping in as
plaintiffs the four individuals who filed consent-to-join forms, would be inconsistent with the
reasoning, if not the holding, of [*Genesis Healthcare*.]"  *Id.* at *3.  In addition, dismissing
Goldowsky's collective action and class action claims would provide "the ability [to] the
putative opt-in plaintiffs to pursue whatever remedies may be available to them."  *Id.*

13

the Court not stay the case in its entirety, the Court should compel the Arbitration Opt-In Plaintiffs to participate in arbitration with Exeter and stay the case relative to their claims, as well.

Dated: New York, New York
          August 11, 2015

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By  *s/Melissa J. Osipoff*
        Melissa J. Osipoff
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

*Attorneys for Defendant*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2015, I electronically filed the foregoing Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and Stay this Action with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered to receive notice via that service.

Dated: August 11, 2015                    By  *s/Melissa J. Osipoff*
                                               Melissa J. Osipoff