UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRADLEY GOLDOWSKY, on behalf of                          **DECISION**
himself and all other similarly situated,                         **and**
                                                                                       **ORDER**
                                                  Plaintiff,

            v.                                                                   **15-CV-632A(F)**

EXETER FINANCE CORP.,
                                                  Defendant.
_____

APPEARANCES:          THOMAS & SOLOMON, LLP
                                    Attorneys for Plaintiff
                                    JONATHAN W. FERRIS,
                                    MICHAEL J. LINGLE, of Counsel
                                    693 East Avenue
                                    Rochester, New York 14607

                                    OGLETREE DEAKINS NASH SMOAK & STEWART, PC
                                    Attorneys for Defendant
                                    EVAN V. CITRON,
                                    AARON WARSHAW, of Counsel
                                    599 Lexington Avenue, 17th Floor
                                    New York, New York 10022


            In this action, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§

202, *et seq.* ("FLSA"), Plaintiff alleges on behalf of himself and 36 similarly situated opt-

in Plaintiffs who have filed consents to join the action as parties (Dkt. 2) ("Opt-In

Plaintiffs") (collectively "Plaintiffs"), as permitted by 29 U.S.C. § 216(b) ("§ 216(b)"),

Defendant misclassified Plaintiffs as exempt from the FLSA's overtime, in excess of 40

hours per week, pay requirements and failed to compensate Plaintiffs for such overtime

at the FLSA's statutory rate of time and one-half per hour of overtime.  Plaintiffs also

allege, pursuant to 28 U.S.C. § 1367, a class-action based on Defendant's violations of

applicable provisions of the N.Y. Labor Law and those of various states in which 36 Opt-

In Plaintiffs resided and were employed by Defendant (Dkt. 50-1 at 10; 50-3 ¶¶ 4-39). Plaintiff resided in this district but was employed by Defendant at Defendant's office located in Albany, New York in the Northern District of New York (Dkt. 1 ¶ 23); and one Opt-In Plaintiff, Denise Gorgone, resided and was employed by Defendant in Westchester, New York, in the Southern District of New York (Dkt. 39-1 ¶ 3). Unlike Plaintiff and 20 of the Opt-In Plaintiffs, who had executed general arbitration agreements with Defendant covering the claims alleged in the instant action (Dkt. 15 at 9-10), Gorgone and the 16 other Opt-In Plaintiffs did not execute any such arbitration agreements with Defendant. Defendant, previously a Texas corporation and, since 2017, a Delaware corporation, is a national provider of sub-prime auto loans with its principal place of business in Irving, Texas, within the Northern District of Texas; Plaintiffs were employed as underwriters, credit analysts, credit managers, senior credit managers and assistant area general managers, who evaluated applicants for Defendant's loan products based on Defendant's credit criteria.

Pending before the court are Plaintiffs' motion, pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"), to transfer this action to the Southern District of New York (Dkt. 47) ("Plaintiffs' Motion") and Defendant's cross-motion requesting the case be transferred to the Northern District of Texas (Dkt. 50) ("Defendant's Cross-Motion"). Also pending are Plaintiffs' Motion For Conditional Certification And Expedited Notice Pursuant To The FLSA (Dkt. 4), filed July 17, 2015) ("Plaintiffs' Motion for Certification and Notice"); Plaintiffs' Motion To Expedite Motion For Expedited Notice Pursuant To The Fair Labor Standards Act, also filed July 17, 2015, (Dkt. 7) ("Plaintiffs' Motion to Expedite"); Defendant's Motion To Compel Arbitration and Stay This Action, filed August 18, 2015

(Dkt. 14) ("Defendant's Motion to Compel Arbitration and Stay"); Defendant's Motion to Dismiss, filed April 29, 2019 (Dkt. 32) ("Defendant's Motion to Dismiss"); Plaintiffs' Motion To Amend The Complaint To Substitute [Opt-In Plaintiff Kenneth Fischer as] The Named Plaintiff filed May 23, 2019 (Dkt. 35) ("Plaintiffs' Motion to Substitute Kenneth Fischer as Named Plaintiff"); Plaintiffs' Motion To Amend The Complaint to Substitute [Opt-In Plaintiff Denise Gorgone as] The Named Plaintiff, filed June 13, 2019 (Dkt. 38) ("Plaintiffs' Motion to Substitute Denise Gorgone as Named Plaintiff").  Plaintiffs did not oppose Defendant's Motion to Compel Arbitration and Stay proceedings, reserving Plaintiffs' rights to invalidate the arbitration agreements for unconscionability following the completion of arbitration pursuant to the agreements between, as noted, 20 of the Opt-In Plaintiffs subject to such agreements and Defendant; however, Plaintiff requested the case proceed with the 16 Opt-In Plaintiffs who had not executed such agreements.  Dkt. 25; Dkt. 50-6 at 20.  Defendant's motion to Compel Arbitration and Stay was not acted upon; however, the court was subsequently informed that Plaintiff and the Opt-In Plaintiffs covered by the agreements had acceded to Defendant's arbitration demand, *see*, Dkt. 5-7, Dkt. 50-8,[1] but no further information regarding the result of the arbitrations has been provided by the parties.

As is apparent, Plaintiffs' motions to amend and substitute Fischer and Gorgone represented an effort by Plaintiffs to avoid dismissal of the action as to Plaintiff and the 20 Opt-In Plaintiffs subject to the arbitration agreements based on Defendant's asserted arbitration requirement applicable to these Plaintiffs; however, Defendant nevertheless opposed Plaintiff's motions contending that Plaintiffs' proposed substitutions were futile

---

[1]  In *Epic Systems Corporation v. Lewis*, ___ U.S. ___, 138 S.Ct. 1612 (2018), the Supreme Court upheld the validity of arbitration agreements covering FLSA claims brought by employees.

given neither Gorgone's nor Fischer's claims could avoid dismissal for lack of venue in this district for Plaintiffs' action required by 28 U.S.C. § 1391 ("§ 1391"). *See* Dkt. 45 ("Plaintiffs' proposed amended Complaint cannot survive a motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.") Compliance with § 1391 is required for FLSA actions, a proposition Plaintiffs do not dispute. *See* Dkt. 47-1 at 12 (asserting venue required by 28 U.S.C. § 1391(b)(1) proper in Southern District of New York where Opt-In Plaintiff Gorgone was employed by Defendant). *See Holmes v. Romeo Enterprises, LLC*, 2015 WL 10848308, *2 (S.D.N.Y. Nov. 2, 2015) (as FLSA provides "no special venue provision" FLSA actions are governed by § 1391(b)), *appeal dismissed*, 667 Fed.Appx. 317 (2d Cir. June 30, 2016). Following Defendant's opposition to Plaintiffs' Motions to Amend to Substitute Fischer and Gorgone as Named Plaintiffs as indicated, *supra*, Plaintiffs filed Plaintiffs' Motion. As Plaintiffs' motions to amend and substitute (Dkts. 35 and 38) were not acted on because of their apparent futility in that neither Fischer nor Gorgone's employment with Defendant had any connection with this district, the court therefore turns to the merits of Plaintiffs' Motion and Defendant's Cross-Motion which both request transfer of the litigation from this district to either the Southern District of New York, as Plaintiffs request, or the Northern District of Texas where Defendant is headquartered and is subject to general jurisdiction and proper venue pursuant to 28 U.S.C. § 1391(b)(1), as Defendant requests.

Pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division <u>where</u> <u>it</u> <u>might</u> <u>have</u> <u>been</u> <u>brought</u>" (underlining added) ("§ 1404(a)"). It is

settled law that for purposes of compliance with § 1404(a) "'an action might have been brought in another forum if the transferee forum would have had personal jurisdiction over the defendants at the time the action was commenced and if venue properly lies there.'" *Madison v. Dyal*, 746 F.Supp.2d 450, 452 (W.D.N.Y. 2010) (quoting *Royal Ins. Co. of America v. Tower Records, Inc.,* 2002 WL 31385815, at *2 (S.D.N.Y. Oct. 22, 2002)) (citations and internal quotation marks omitted); *see also Foster-Milburn Co. v. Knight,* 181 F.2d 949, 950-52 (2d Cir. 1950) (under § 1404(a) proposed transferee district must be one where defendants are subject to process).  Further, the moving party has the burden to establish the prerequisites for transfer pursuant to § 1404(a). *See Travelers Property Casualty Company of America v. Ocean Reef Charters LLC*, 324 F.Supp. 366, 374 (W.D.N.Y. 2018) ("The moving party carries the 'burden of making out a strong case for transfer [under § 1404(a)]'") (quoting *Filmline (Cross-Country Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). (bracketed material added).  If the action could have been brought in the proposed transferee district, the court considers several factors to determine whether the transfer would promote the convenience of witnesses and the interests of justice.  28 U.S.C. § 1404(a).  Here, the record indicates that the remaining 16 Opt-In Plaintiffs, those ~~are~~ not subject to arbitration agreements with Defendant, neither reside in New York State nor have any business or other relationship with Defendant within New York State, particularly employment sufficient to establish personal jurisdiction over Defendant in New York State that supports service of process upon Defendant and that could be issued by the Southern District of New York, Opt-in Plaintiff Gorgone's place of employment with Defendant.  As a result, this collective action, brought pursuant to §

216(b), could not have been commenced in the Southern District of New York for lack of personal jurisdiction over the claims of Plaintiff and the 35 non-resident Opt-In Plaintiffs (except Gorgone) and, accordingly, Plaintiffs' motion fails the threshold requirement of § 1404(a) to permit transfer as Plaintiffs request.

According to the Second Circuit, the availability of personal jurisdiction over a plaintiff's claim by a court requires proper service of process issued by the forum court, a statutory basis for personal jurisdiction which supports service of process, and that the exercise of personal jurisdiction in the forum court comports with due process. *Pettenato v. Beacon Health Options, Inc.*, 425 F.Supp.3d 264, 272 (S.D.N.Y. 2019) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (2d Cir. 2012)), *settlement upon joint motion approved* 2020 WL 7240345 (S.D.N.Y. Sept. 28, 2020); *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014). "'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Walden* , 571 U.S. at 283 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "This [prerequisite to personal jurisdiction] is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id.* (quoting Fed.R.Civ.P. 4(k)(1)(A) (bracketed material added)). A district court may also exercise personal jurisdiction over a non-resident defendant and issue process where a federal statute authorizes it. *See* Fed.R.Civ.P. 4(k)(1)(C). Thus, "[i]f the federal statute [like § 216(b) which is basis for Plaintiffs' claims] 'does not specifically provide for national service of process, and the defendants reside outside of the forum state, 'a federal court applies the forum state's personal jurisdiction rules.'"

*Pettenato*, 425 F.Supp.3d at 271 (bracketed material added) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990))).

In § 216(b), the FLSA authorizes aggrieved employees to commence an action to recover damages for, *inter alia*, unpaid overtime in "any Federal or State court of competent jurisdiction" on behalf of such aggrieved employees and "other employees similarly situated."  29 U.S.C. § 216(b).  While § 216(b) permits such similarly situated employees to opt-in to the underlying action, § 216(b) does not "'authorize[ ] a class action; it is properly viewed as rule of joinder under which only the opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees.'"  *Roy v. FedEx Ground Package System, Inc.*, 353 F.Supp.3d 43, 59 (D.Mass. 2018) (quoting *Anjum v. J.C. Penney Co.*, 2014 WL 5090018, at *8 (E.D.N.Y Oct. 9, 2014)).  Significantly, the FLSA also "does not provide for nation-wide service of process."  *Pettenato*, 425 F.Supp.3d at 273 (citing cases); *see also Greinstein v. Fieldcore Services Solutions, LLC*, 2020 WL 6821005 (N.D.Tex. Nov. 20, 2020) ("Congress did not include a nationwide service of process provision in the FLSA"); *Holmes v. Romeo Enterprises, LLC*, 2015 WL 10848308, at *2 (S.D.N.Y. Nov. 2, 2015) (§ 216(b) contains no special venue provision allowing a FLSA suit in any district court).

New York law provides personal jurisdiction over non-residents in New York courts based on consent as provided in N.Y.C.P.L.R. § 301, *see Pratt v. Atalian Global Services, Inc.*, 2020 WL 7028690, at *19 (S.D.N.Y. Nov. 30, 2020), or through New York's long-arm jurisdiction, specifically, as relevant here, N.Y.C.P.L.R. 302 [a](1) which extends personal jurisdiction over any "non-domiciliary . . . who . . . transacts any

business within the state . . ." ("§ 302[a](1)").  *See Tianbo Huang v. iTV Media, Inc.*, 13

F.Supp.3d 246, 254-55 (E.D.N.Y. 2014) (employment of New York resident by non-

resident constitutes transaction of business sufficient to support long-arm jurisdiction

over non-resident defendant).  Here, as noted, aside from Plaintiff and Opt-In Plaintiff

Gorgone, none of the Opt-In Plaintiffs were employed by Defendant in New York State

and Plaintiff does not argue otherwise.  Although Plaintiff contends, Dkt. 39 at 16, that

by registering under N.Y. Bus. Corp. Law §§ 1301 and 1304[a](6) ("§§ 1301 and

1304[a](6)") as a foreign corporation and designating the N.Y. Secretary of State as an

agent for service of process, Defendant has consented to general jurisdiction in New

York pursuant to §§ 1301 and § 1304[a](6)], Plaintiffs' contention is without merit.  *See*

*Wilderness USA, Inc. v. DeAngelo Bros. LLC*, 265 F.Supp.3d 301, 313-14 (W.D.N.Y.

2017) (registration pursuant to §§ 1301 and 1304[a](6) does not establish a foreign

corporation registrant has consented to general jurisdiction in New York State) (citing

*Brown v. Lockheed Martin Corp.*, 814 F.2d 319, 640 (2d Cir. 2016) (Connecticut foreign

corporation registration law did not create valid consent to state court's general

jurisdiction over foreign corporate registrant), and citing *Daimler AG v. Bauman*, 571

U.S. at 137-38 (2014)).  Although in opposition to Defendant's Motion to Dismiss,

Plaintiffs assert, Dkt. 39 at 24-25, and as further relied upon by Plaintiffs in support of

Plaintiffs' Motion and Plaintiffs' opposition to Defendant's Cross-Motion, Dkt. 54 at 11-

12, that discovery may demonstrate Defendant's presence in New York State based on

the substantiality and continuance of Defendant's business activities in New York State,

the court finds this suggestion is unavailing given that, based on the pleadings,

Defendant employed only two underwriters in New York, Plaintiff and Gorgone, whereas

the record indicates Defendant, a national auto loan company with numerous employees conducting auto loan credit evaluations in at least thirteen other states throughout the United States, supports the conclusion that Plaintiffs' requested discovery is unlikely to demonstrate that, based on the volume of business Defendant transacts in New York, Defendant could be found to be present in New York to the degree now required to support general jurisdiction over Defendant in the State.  *See Wilderness USA, Inc.*, 265 F.Supp.3d at 309 ("[w]hen a corporation is neither incorporated in nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, <u>are</u> <u>extraordinarily</u> <u>unlikely</u> to add up to an exceptional case warranting the exercise of general personal jurisdiction") (quoting *Brown*, 814 F.3d at 629) (citing *Daimler AG*, 571 U.S. at 140 n. 20) (internal quotation marks omitted) (underlining added)).  Here, it is undisputed that when this action was commenced Defendant was incorporated in Texas (since 2017 in Delaware) and maintains its principal place of business in Texas.  Accordingly, discovery is unlikely to provide evidence that Defendant is present in New York State and thus subject to general jurisdiction based on any substantial amount of its business activity in New York.

Relevantly, the Supreme Court in *Bristol-Myers Squibb  Co. v. Superior Court of California*, ___ U.S. ___, 137 S.Ct. 1773 (2017) ("*Bristol-Myers*") has clarified that where numerous non-resident plaintiffs sued a non-resident defendant alleging product liability claims, in order to satisfy Fourteenth Amendment due process, the underlying claim of each plaintiff must be shown to have an "'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the

forum state.'" *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Significantly, although in *Bristol-Myers* the claims of the numerous non-resident plaintiffs were similar to those of the resident plaintiffs in that case, because the underlying actions giving rise to the non-resident plaintiffs' claims, specifically, ingestion of defendant's Plavix medication as the cause of plaintiffs' illnesses, occurred in other jurisdictions California, the forum state, lacked any "connection between the forum and the specific claims at issue, *Bristol-Myers*, 137 S.Ct. at 1781*,* requiring their dismissal for lack of due process.  Because, like most of the numerous – 600 plus – individual non-resident plaintiffs' claims in *Bristol-Myers*, considered as a mass tort case, *Pettenato*, 425 F.Supp.3d at 274 (quoting *Simon v. Ultimate Fitness Grp., LLC,* 2019 WL 4382204, at 3 (S.D.N.Y. Aug. 19, 2019) (citing *Bristol-Myers*, 137 S.Ct. at 1778), as sued by the individual party plaintiffs, bear a marked similarity to the collective action claims of opt-in plaintiffs who, by the terms of § 216(b), are, and remain, actual parties to the collective action by virtue of their opting-in to the collective action as permitted by § 216(b), courts are now required, in accordance with *Bristol-Myers*, to scrutinize the relationship of the specific factual contacts of each non-resident plaintiff, who has opted-in to a § 216(b) collective action, to the forum court, specifically, opt-in plaintiff's place of employment, in order to assure that the assertion of the forum court's personal, *i.e.*, specific*,* jurisdiction over these claims comports with due process and also supports the issuance of service of process upon the non-resident employer defendant as required by Rule 4(k)(1)(A).  *See Pettenato*, 425 F.Supp.2d at 278 (applying *Bristol-Myers*'s requirement that non-resident plaintiff's "'suit must arise out of or relat[e] to the defendant's contacts within

the *forum*,'" *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Daimler AG*, 571 U.S. at 127) (italics in *Bristol-Myers*) to the claims of non-resident opt-in plaintiffs in FLSA collective action).[2]  As the court in *Pettenato* also persuasively explained, the applicability of *Bristol-Myers* to an FLSA collective action is apparent given that the FLSA's collective action more closely resembles the mass tort actions asserted by the non-resident plaintiffs in *Bristol-Myers* as each plaintiff in the collective action becomes an actual plaintiff in the collective action in contrast to non-appearing members of a class action in which the forum court requires only personal jurisdiction over the representative plaintiff's claim.  *Pettenato*, 425 F.Supp.3d at 279 ("[e]very plaintiff who opts into an FLSA action has party status.")  *Id.* (quoting 7B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1807 (3d ed. 2004)); *see also* Alan G. King & Camille E. Ozumba, *Strange Fiction: The "Class Certification" Decision in FLSA Collective Actions*, 24 Labor Lawyer 267, 268 (Winter/Spring 2009) (opining that FLSA collective actions "are mass, not class, actions").  Moreover, unlike class actions, opt-in plaintiffs in § 216(b) actions are subject to discovery.  *Id.* (citing caselaw).

As based on the record in this case, except for Opt-In Plaintiff Gorgone, none of the other Opt-In Plaintiffs, have demonstrated any nexus between their respective employment with Defendant and their related unpaid over-time claims within New York state, such that their claims cannot support personal jurisdiction in New York based on N.Y.C.P.L.R. 302[a](1) and, therefore, cannot support service of process upon Defendant in the Southern District of New York as Rule 4(k)(1)(A) requires.  The court

---

[2]  Whether *Bristol-Myers* is applicable to the claims of non-resident opt-in plaintiffs in FLSA actions has produced a split of authority, *see Pettenato*, 425 F.Supp.3d at 276-79, among district courts.  To date, no Court of Appeals has addressed the question.

therefore finds the case, pleaded as a § 216(b) collective action inclusive of 36 alleged

opt-in similarly situated non-resident employees, could not, for lack of personal

jurisdiction and proper venue over such claims, have been brought in the Southern

District of New York as Plaintiff asserts.  Accordingly, Plaintiffs have failed to

demonstrate, as is Plaintiffs' burden, this action could have been brought in the

Southern District of New York as Plaintiffs request and, as such, Plaintiff's Motion must

be DENIED.[3]  Further, as Plaintiff's motion fails to meet the threshold requirement for

transfer, by showing jurisdiction and proper venue, pursuant to § 1404(a), it is

unnecessary to evaluate Plaintiff's further contentions based on § 1404(a)(2) relating to

convenience of witnesses and other relevant factors.  *See PI, Inc. v. Ogle*, 932 F.Supp.

80, 84-85 (S.D.N.Y. 1996) (declining to address factors relevant to motion to transfer

pursuant to § 1404(a) where moving defendant failed to establish the case could have

been brought in the proposed transferee district).  Additionally, as Defendant is

headquartered in the Northern District of Texas it is therefore "at home" in that district

sufficient to support general jurisdiction over all cognizable claims, including those

brought pursuant to the FLSA in the instant matter, as Defendant concedes.  *See* Dkt.

50-1 at 9 ("each Plaintiff could have asserted their claims against Exeter in the Northern

District of Texas because . . . [that] court possesses general jurisdiction over Exeter.")

(citing *Daimler AG*, 571 U.S. at 122 ("court may assert general jurisdiction over a foreign

corporation only where the corporation is 'essentially home in the forum State.'"));

*Brown*, 814 F.3d at 624 (2d Cir. 2016) (". . . a corporate defendant may be treated as

'essentially at home' only where it is incorporated or maintains its principal place of

---

[3] A motion to transfer pursuant to 28 U.S.C. § 1404(a) is non-dispositive.  *Buffalo Newspress Inc. v. Adlife Marketing & Communications Co., Inc.*, 2019 WL 3886725, at * 1 (W.D.N.Y. Aug. 19, 2019) (citing cases).

business.").  Moreover, the court notes Opt-In Plaintiffs will not be unfairly prejudiced by transfer to the Northern District of Texas as Defendant's Cross-Motion requests.  Sixty percent of the Opt-In Plaintiffs reside in southern states – nine in Texas, three in North Carolina, three in Florida, two in Georgia and Tennessee, and one in Alabama, Arkansas, and Oklahoma.  Dkt. 50-1 at 10.  The others reside in California, Missouri, Indiana, Illinois, Ohio and Wisconsin.  *Id.*  Thus, as a matter of geographical distribution, Texas, and more particularly, Dallas, where the Northern District of Texas courthouse is located, is a more central and convenient location for litigation of Plaintiffs' claims than that of the Southern District of New York with the exception of Opt-In Plaintiff Gorgone's claims.  Further, with the availability of video-conferencing technology, it is unlikely that Plaintiffs will be required to travel to Dallas for depositions.  The locus of operative facts, particularly the formulation and implementation of Defendant's employment policies and practices at issue in this case, also points to the Northern District of Texas where Defendant is headquartered.  Defendant's Cross-Motion is therefore GRANTED.

As regards to Defendant's Motion to Compel Arbitration and Stay (Dkt. 14), based on the Plaintiffs' failure to oppose this motion and the indications to the court that Plaintiffs subject to the arbitration agreements have proceeded to arbitration of their claims with Defendant it appears that Defendant's motion is moot and as such should be DISMISSED.  Similarly, given that Defendant's Cross-Motion to Transfer is GRANTED, Defendant's Motion to Dismiss (Dkt. 32), asserting deficient jurisdiction and improper venue, and Plaintiff's Motions to Amend and to Substitute Kenneth Fischer and Denise Gorgone as the Named Plaintiffs (Dkts. 35 and 38) should also be DISMISSED as moot.  Plaintiff's Motions for Conditional Certification and for Notice

(Dkt. 4 and 7) relating to the merits of the case should be addressed by the transferee court.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 47) is DENIED; Defendant's Cross-Motion (Dkt. 50) is GRANTED; Defendant's Motion to Compel Arbitration and Stay (Dkt. 14); Defendant's Motion to Dismiss (Dkt, 32) and Plaintiffs' Motions to Amend and to Substitute Kenneth Fischer and Denise Gorgone as the Named Plaintiffs (Dkt. 35 and 38) are DISMISSED as moot.  Plaintiffs' Motion for Conditional Certification Notice (Dkt. 4) and Plaintiffs' Motion to Expedite Conditional Certification and Notice (Dkt. 7) should be addressed by the transferee court.  The Clerk of Court is directed to take all steps necessary to transfer this matter to the Northern District of Texas.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  February 23, 2020
         Buffalo, New York